2002 ME 138

**Carole LOVELY–BELYEA**

v.

**MAINE STATE RETIREMENT SYSTEM.**

Supreme Judicial Court of Maine.

Argued: June 11, 2002.
Decided: Aug. 16, 2002.

---

James B. Haddow, (orally), Petruccelli, Martin & Haddow, LLP, Portland, for plaintiff.

G. Steven Rowe, Attorney General, James M. Bowie, Asst. Attorney General (orally), Judith M. Peters, Asst. Attorney General, Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Carole Lovely–Belyea appeals from the judgment entered in the Superior Court (Cumberland County, *Crowley, J.*), affirming the decision of the Board of Trustees of the Maine State Retirement System denying her application for disability retirement benefits. Lovely–Belyea asserts that the Board erred in finding that it had complied with federal requirements for notice and the length of the election period when it implemented a federally mandated non-age discriminatory

disability retirement plan. We disagree and affirm the judgment.

## I. CASE HISTORY

[¶ 2] On October 16, 1990, Congress passed the Older Workers Benefit Protection Act to insure that state employees had the opportunity to enroll in non-age discriminatory benefit plans that met the requirements of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1999) (ADEA). Older Workers Benefit Protection Act, Pub.L. No. 101–433, 104 Stat. 978 (1990) [hereinafter OWBPA] (codified in part at 29 U.S.C. § 626(f)(1)). The OWBPA provided a two-year period within which states could elect a safe harbor provision that allowed a state to offer its existing public employees the opportunity to choose either a new non-age discriminatory disability retirement plan or to remain in an existing age-discriminatory disability retirement benefits plan. *Id.* § 105(c)(1). The OWBPA provided that states seeking the "safe harbor" had to make an offer of a non-age discriminatory disability retirement benefit plan to member state employees and provide reasonable notice "no later than the date that is two years after enactment of the this Act." *Id.* § 105(c)(2)(A)(ii)(I). The OWBPA's safe harbor provisions also required that the employee be "given up to 180 days after the offer in which to make the election." *Id.* § 105(c)(2)(A)(ii)(II). The OWBPA defined "reasonable notice" as requiring employers to provide employees "sufficiently accurate and comprehensive" notice of whether they were immediately eligible for disability benefit. *Id.* § 105(c)(4)(C)(i).

[¶ 3] In anticipation of the Maine Legislature adopting a plan that would place the state retirement system in the "safe harbor," the Maine State Retirement System (MSRS) distributed notices of a "no-age-limit disability plan" to state employers on October 15, 1992 for distribution to employees the next day. This notice indicated that "[p]ersons who are employees on October 16, 1992 are entitled to elect to move to the NO–AGE–LIMIT DISABILITY PLAN."[1] The notice contrasted the current age-limited plan with the new no-age limit plan, noting the different levels of benefit compensation and the maximum periods of disability benefit payments. The notice also provided a list of factors the employee should consider when deciding which plan to elect: age, health, and number of years of service. The notice did not include an election form.

[¶ 4] On October 16, 1992, the Maine Legislature passed legislation, codified at 5 M.R.S.A. § 17941, which provided a non-age discrimination disability retirement benefit plan and included a provision for employees to elect to remain in the existing plan. P.L.1991, ch. 887, § 10 (*repealed by* P.L.1995, ch. 643, § 16). The State's enabling act provided that state agencies and school districts were to give "the information and election form to each member entitled to the election not later than October 16, 1992," that a member may not make an election "later than 180 days after October 16, 1992[,] and [that] the election is irrevocable."[2] 5 M.R.S.A. § 17941(1)(C) & (E) (*repealed by* P.L.1995, ch. 643, § 16). MSRS sent out a second notice to employees on March 1, 1993. This notice included an election form and was substantially

---

1. The pre-existing age-discriminatory plan ends eligibility for disability retirement at retirement age, 60 or 62, and the non-age discriminatory plan provides for benefit eligibility at any age.

2. Those members of MSRS who did not make an election remained in the age-limited plan. 5 M.R.S.A. § 17941(2).

similar to the notice sent in October 1992.[3] The notice indicated that the employee must make an election "no later than April 14, 1993."

[¶ 5] On October 15, 1992, the MSRS distributed the October 1992 notice to state agencies and school districts, including the Lewiston School District, Lovely–Belyea's employer, for distribution the next day. The school district distributed these notices through the school principals for placement in school employee mailboxes. When the school district distributed the March notices and election forms, it set a return date of April 1, 1993.

[¶ 6] Until 1998, Lovely–Belyea taught special education at one of the Lewiston School District's elementary schools. She had returned a benefits plan election form on March 31, 1993, indicating that she chose to remain in the existing age-limited disability retirement plan. Five years after electing a benefit plan, Lovely–Belyea, then sixty-one years old, applied for disability retirement benefits. The MSRS Executive Director denied her application for disability benefits because Lovely–Belyea was eligible for service retirement and had elected to remain in the age-limited plan. She appealed to the Board of Trustees, which affirmed the administrative decision denying benefits on the basis of Lovely–Belyea's age. Lovely–Belyea appealed to the Superior Court, which affirmed the decision of the Board of Trustees. Lovely–Belyea, thereafter, brought this appeal.

## II. DISCUSSION

■ [¶ 7] Lovely–Belyea argues that MSRS failed to provide her with the 180–day notice period she says the OWBPA mandates for electing a disability retirement plan, and she contends that, as a result, her prior election is void. We review directly the decisions of the Board of Trustees of the MSRS "for errors of law, abuse of discretion or findings of fact unsupported by competent and substantial evidence in the record." *Richardson v. Bd. of Trs., Maine State Ret. Sys.*, 1998 ME 171, ¶ 4, 714 A.2d 154,156.

[¶ 8] The OWBPA requires that states provide "up to 180 days" for electing either an age-limited benefits plan or a non-age limited one. OWBPA, § 105(c)(2)(A)(ii)(II). The United States Supreme Court has strictly interpreted the OWBPA's procedural requirements for waivers of ADEA claims, holding that they take precedence over common-law contract precepts.[4] *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (interpreting the waiver provisions found in OWBPA, § 201 *codified at* 29 U.S.C. § 626(f)). Other federal courts have also strictly interpreted OWBPA provisions. *See, e.g., Erie County Retirees Ass'n v. County of Erie, Pa.*, 220 F.3d 193, 214–215 (3rd Cir.2000) (state employer may not provide inferior health care benefits to Medicare eligible retirees, under a safe harbor provision allowing for age discrimination for "reasonable factors other than age."), *cert. denied*, 532 U.S. 913, 121 S.Ct. 1247, 149 L.Ed.2d 153 (2001).

■ [¶ 9] Strictly interpreted, "up to" provides a time for the close of an election

---

3. The March notice in addition mentioned the sunset provision adopted by the Legislature, whereby the Legislature would reset the benefit level of the new no-age limit plan before July 1, 1994. *See* P.L.1992, ch. 887, § 2 (*amending* 4 M.R.S.A. § 1353(2)).

4. Lovely–Belyea relies by analogy upon *Oubre*, 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998), for the assertion that OWBPA must be strictly read to mandate a 180–day election period.

period. This interpretation is consistent with the State's enabling act which sets the election period to end "no later than April 14, 1993," exactly 180 days after the legislature established the non-age discriminatory benefits plan in order to enter the "safe harbor" provided by OWBPA. P.L.1992, ch. 887, § 10. The legislature's interpretation of the OWBPA's "up to 180 days" as "not later than 180 days after October 16, 1992" is consistent with Congress's intent to require states to offer non-age discriminatory benefit plans and give employees 180 days to make the election. *Compare* OWBPA, § 105(c)(2)(A)(ii)(II), *with* P.L.1992, ch. 887, § 10(E); *see also* OWBPA, § 101 [Finding] (setting forth congressional finding).

■ [¶ 10] Lovely–Belyea also contends that MSRS failed to comply with the State enabling act by not providing an election form with the October 1992 notice. The State enabling act required the election form at the time of the October notice and offer, not the OWBPA. *Compare* OWBPA, § 105(c)(2)(A), *with* P.L.1991, ch. 887, § 10(E). The State enabling act required state agencies or school administrative districts to give "the information and election form to each member entitled to the election not later than October 16, 1992." P.L. 1992, ch. 887, § 10(C). It also required that "a member's election is not effective unless it is signed and dated on or before a date established by the executive director that may not be later than 180 days after October 16, 1992 and the election is irrevocable." *Id.* § 10(E). Although MSRS did not include the election form until it provided a subsequent notice to members in March 1993, this omission did not make the October 1992 notice and offer ineffective because Lovely–Belyea received an election form within the election period

and any election would only have been effective after April 14, 1993.

[¶ 11] Lovely–Belyea received a notice about an impending benefits election in October 1992, 180 days before that election was due by statute (thereby complying with the federal statute), and a second notice with an election form in early March 1993, twenty-eight days before the date by which Lewiston School District asked her to return the form (thereby complying with the State enabling act). In that time, she made an effective and timely election, choosing to remain vested in the age-limited disability retirement benefits plan.

The entry is:

Judgment affirmed.

LEVY, J., with whom ALEXANDER and CALKINS, JJ., join, concurring.

[¶ 12] I respectfully disagree with the majority's conclusion that Lovely–Belyea received a notice that complied with the Older Workers Benefit Protection Act (OWBPA) and the State's enabling act. Nonetheless, I concur with the majority's conclusion that the judgment should be affirmed because Lovely–Belyea has not demonstrated that the deficiencies in the notice caused her to suffer any actual prejudice.

[¶ 13] The notice was deficient in three ways: First, the OWBPA requires that the notice be "sufficiently accurate and comprehensive to appraise the employee of the terms and conditions of the disability benefits, including whether the employee is immediately eligible for such benefits." Pub.L. No. 101–433, § 105(c)(4)(C)(i), 104 Stat. 978, 982 (1990). The October notice did not contain the terms and conditions of the offer and, specifically, it did not include an indication of whether Lovely–Belyea was immediately eligible for the benefits.

[¶ 14] Second, the State's enabling act required that an election form be given to each member of the retirement system entitled to make the election "no later than October 16, 1992." 5 M.R.S.A. § 17941(1)(C) (Supp.1993) (*repealed by* P.L.1995, ch. 643, § 16). It is undisputed that the October notice did not contain an election form. The fact that an election form was subsequently provided in March does not negate this plain deficiency.

[¶ 15] Third, the OWBPA requires that "the employee [be] given up to 180 days after the offer in which to make the election." Pub.L. No. 101–433, § 105(c)(2)(A)(ii)(II), 104 Stat. at 982. In the present case, Lovely–Belyea was given until April 1, 1993 to make her election— 166 days after the October notice and 30 days after the March notice. Neither notice gave her "up to 180 days" in which to make her election. Contrary to the majority's opinion, the plain language of the "safe harbor" provisions of the OWBPA give the 180 day period to *employees* to decide whether to make the election, not to employers to arbitrarily create a shorter election period. Reading the provisions to require that employers give employees no less than 180 days is consistent with the legislative history of the act. *See* 136 CONG. REC. H8614–02, H8619 (1990) (discussing "an election period of at least 180 days"); 136 CONG. REC. S13594–01, S13605 (1990) noting ("[u]nder the transition provision, with reasonable notice, current State employees will have 180 days following the effective date of the new plan to elect whether they want to be covered under the new plan"). Doing so is also consistent with the underlying intent of the "safe harbor" provisions that employees be given "reasonable notice." *See* OWBPA, Pub.L. No. 101–433, § 105(c)(2)(A)(i), 104 Stat. at 981–82. The

majority's reading of "up to 180 days" places no limit on the public employer's ability to arbitrarily designate an unacceptably short election period.

[¶ 16] Despite these deficiencies, I concur with the majority's decision to affirm the judgment because, as the Superior Court concluded in its order, Lovely–Belyea has not shown that she was prejudiced by her employer's failure to strictly comply with the OWBPA's notice requirements. "A technical violation of a statutorily prescribed manner to give notice is not fatal when it does not prejudice the party receiving the notice, and a court may disregard nonprejudicial failure · to comply strictly with notice requirements." *Town of Ogunquit v. Dep't of Pub. Safety*, 2001 ME 47, ¶ 11, 767 A.2d 291, 294. To show such prejudice, Lovely–Belyea must present more than her desire, with the benefit of hindsight, to have made a different election. She has not attempted to do so, however, at any stage of the present proceedings. Accordingly, I agree that the judgment should be affirmed.