DECISION
The Defendant, John A. Celona, has moved for this Court to dismiss Counts 1, 3, 4, and 5 of the State's criminal indictment on the grounds that prosecution on these counts would violate the Double Jeopardy Clause of both the United States Constitution and the Constitution of the State of Rhode Island, because the State, in effect, has already prosecuted the Defendant before the Rhode Island Ethics Commission.See generally, U.S. Const. amend. V; R.I. Const. art. I, § 7. The State counters that the fines imposed by the Ethics Commission are intended to be civil remedies and that "only the clearest proof will suffice to override legislative intent and transform what had been denominated a civil remedy into a criminal penalty." Hudson v. United States,522 U.S. 93, 99 (1997) (citing United States v. Ward, 448 U.S. 242, 249 (1980)).
 I. The Defendant's Motion and Argument
In the Defendant's Motion to Dismiss, the Defendant has asserted that each of the four counts at issue exactly parallels one or more counts in a ten-count consolidated complaint filed by the Ethics Commission. The Defendant admitted to all ten counts in the consolidated complaint at a hearing before the Ethics Commission conducted on July 25, 2006. (Ethics Comm. Tr. at 12.) Following the Defendant's admission to all counts, the Ethics Commission assessed penalties against the Defendant totaling $130,000.
The Defendant alleges that criminal prosecution, after the Ethics Commission has already assessed penalties, amounts to unconstitutional double jeopardy. The Defendant's argument relies heavily on our Supreme Court's decision in State v. Levesque, 694 A.2d 411 (R.I. 1997), a decision that in turn bases its legal analysis on the United States Supreme Court's holding in United States v. Halper, 490 U.S. 435 (1989).
In Halper, the United States Supreme Court held that courts should subject the imposition of a "punishment" of any kind to double jeopardy constraints. Halper, 490 U.S. at 448. Whether a sanction constituted "punishment" depended primarily on whether the sanction served the traditional goals of punishment, namely "retribution and deterrence."Id. Any decision that "could not `fairly be said solely to serve the remedial purpose' of compensating the government for its loss was thought to be explainable only as `serving either retributive or deterrent purposes.'" Hudson, 522 U.S. at 101 (quoting Halper,490 U.S. at 448-449 (emphasis added)).
The Defendant asserts that the fines resulting from the "laundry list" of charges brought before the Ethics Commission constitute remedial or deterrent penalties. Therefore, the Defendant maintains that, under theLevesque and Halper decisions, the Ethics Commission proceedings invoke the protection against double jeopardy, because a civil sanction that does not solely serve a remedial purpose constitutes a punishment. However, in Levesque, the Rhode Island Supreme Court held that an Ethics Commission sanction may actually serve remedial purposes — such as payment for the cost of proceedings or investigation into the charges — rather than punitive purposes and remanded the case for a hearing to determine the costs and expenses incurred by the State.
In this case, the Ethics Commission provided no record to indicate what basis the Commission used for setting the amount of the fines and what portions, if any, were remedial. The Defendant argues that in the absence of remedial reasons for assessing the fines, this Court must consider the fines to be punitive in nature and therefore should dismiss the State's criminal case on double jeopardy grounds.
Although this Court acknowledges that the Rhode Island Supreme Court has never explicitly overturned its decision in Levesque, this Court finds that the Defendant's argument fails. The legal standard established in Halper has changed significantly since the United States Supreme Court handed down that decision in 1989. Specifically, in 1997 — eight months after the Levesque decision — the United States Supreme Court decided Hudson v. United States, 522 U.S. 93 (1997). InHudson, the Supreme Court held that monetary penalties and occupational debarment sanctions imposed on bankers by the federal Office of the Comptroller of the Currency did not bar the bankers' subsequent criminal trial for the same conduct. The Supreme Court held that the OCC's administrative proceedings were civil, not criminal, actions for purposes of the Double Jeopardy Clause.
The Hudson decision effectively overruled Halper and redefined the analysis for determining whether double jeopardy bars criminal prosecution when an administrative agency has already assessed penalties on the same legal issues. Accordingly, this Court will review the Defendant's argument under the Hudson analysis.
 II. The Hudson Analysis
After deciding Halper, the Supreme Court recognized that if a sanction must be "solely" remedial to avoid implicating double jeopardy, then no civil penalties are beyond the scope of the Double Jeopardy Clause.Hudson, 522 U.S. at 102. In the revised standard promulgated inHudson, the United States Supreme Court emphasized that the Double Jeopardy Clause "protects only against the imposition of multiplecriminal punishments for the same offense." Id. at 99.
In Hudson, the Supreme Court instructed courts to perform a two-part test. First, Courts must analyze the statute's construction and ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for a civil or a criminal label. Id. Second, in those cases where the legislature has indicated an intention to establish a civil penalty, courts must further inquire whether a statutory scheme is so punitive either in purpose or effect that applying the scheme transforms an intended civil remedy into a criminal penalty. Id. See generally Ret. Bd. of the Employees' Ret.Sys. of the State of Rhode Island and City of Cranston v. Azar,721 A.2d 872 (R.I. 1998)
 A. The Hudson Test: Part One
In the instant matter, this Court first analyzed the statutory construction of the Code of Ethics and determined whether the Rhode Island Legislature and the Ethics Commission considered the fines a civil or a criminal penalty. Id. The statute at issue — G.L. 1956 §36-14-13(d)(3) — specifically and explicitly provides that the Ethics Commission may impose a "civil fine" of up to $25,000.00 per violation of the Rhode Island Code of Ethics. Additionally, in the Declaration of Policy for the Code of Ethics, our Legislature indicated that the Code has a fundamentally remedial purpose to protect the public. G.L. 1956 § 36-14-1 provides that:
 [i]t is the policy of the state of Rhode Island that public officials and employees must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable, responsive, avoid the appearance of impropriety, and not use their position for private gain or advantage.
Furthermore, in the Levesque decision itself, our Supreme Court stated unequivocally that an Ethics Commission Hearing is a "civil proceeding" and that the sanctions imposed by the Ethics Commission constitute "civil fines." Levesque, 694 A.2d at 411-412. This Court also notes that the Defendant's counsel before the Ethics Commission hearing consistently used the terms "civil penalty" and "civil sanction" when describing the fines imposed by the Ethics Commission. (See, e.g. Ethics Comm. Tr. at 55-57.) Therefore, this Court finds that the Rhode Island Legislature intended penalties assessed by the Ethics Commission to be civil penalties, thereby satisfying Part One of the Hudson test.
 B. The Hudson Test: Part Two
With regard to Part Two of the Hudson test, the United States Supreme Court has advised courts to assess the penalty at issue under a series of seven guideposts first established in the United States Supreme Court Case of Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (1963). Under these guideposts, Courts should consider:
 (1) whether the sanction involves an affirmative disability or restraint;
 (2) whether [the sanction] has historically been regarded as punishment;
 (3) whether it comes into play only on a finding of scienter;
 (4) whether its operation will promote the traditional aims of punishment, retribution, and deterrence;
 (5) whether the behavior to which it applies is already a crime;
 (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and
 (7) whether it appears excessive in relation to the alternative purpose assigned.
Hudson, 522 U.S. at 99 (citing Mendoza-Martinez, 372 U.S. at 168-169). The Hudson decision further advised courts not to consider any single factor as controlling, as each individual factor may point in different directions. Id. at 101. Furthermore, courts should not focus on the character of the actual sanctions imposed, but instead should evaluate the "statute on its face" to determine whether any punitive measures provided by the statute amount to criminal sanctions. Id. According toHudson, "only the clearest proof will suffice to override legislative intent and transform what had been denominated a civil remedy into a criminal penalty." Id. at 99 (citing Ward, 448 U.S. at 249). In this case, this Court considers it prudent to perform the full seven-part analysis in order to foreclose any concerns that the Ethics Commission's penalties might constitute double jeopardy.
First, the civil penalty does not impose an "affirmative disability or restraint." As noted in Hudson, a monetary fine, coupled with an indefinite ban on working in the banking industry, does not constitute an "affirmative disability or restraint" because the sanctions do not "approach the infamous punishment of imprisonment." Id. at 104. As noted by the New Mexico Court of Appeals in the parallel issue of business ethics in secured transactions, even a harsh civil penalty does not carry the stigma of a criminal conviction. State v. Kirby, 70 P.3d 772,779 (N.M.Ct.App. 2003). In the instant matter, the Ethics Commission imposed only monetary fines within the boundaries set by statute.See G.L. 1956 § 36-14-13(d)(3). Therefore, the Commission's decision did not impose an "affirmative disability or restraint" on the Defendant.
Second, monetary assessments are "traditionally a form of civil remedy." Money penalties have not historically been viewed as punishment. Hudson, 522 U.S. at 104. Furthermore, they have historically been regarded as civil, not criminal, penalties. See Kimmelman v.Henkels McCoy, Inc., 527 A.2d 1368, 1373 (N.J. 1987) (finding that a civil penalty in excess of $100,000 was appropriate in an antitrust action where the defendants had conspired to rig bids, fix prices, and allocate territories for construction projects). Similarly, "the payment of fixed or variable sums of money [is a] sanction which has been recognized as enforceable by civil proceedings since the original revenue law of 1789." Hudson, 522 U.S. at 104 (quoting Helvering v.Mitchell, 303 U.S. 391, 400 (1938)). Here, the Ethics Commission set a fixed monetary penalty against the Defendant pursuant to statute, further indicating that the decision constituted a civil sanction, not a criminal penalty.
Third, the civil penalty imposed by the Ethics Commission does come into play "only on a finding of scienter." Hudson concluded that a court may find "scienter" in a statute where the imposition of sanctions is contingent upon a finding of willfulness. See Hudson, 522 U.S. at 104. Here, the standard for proving a violation of the Code of Ethics is "knowing and willful." G.L. 1956 § 36-14-13(a)(8). See DiPrete v.Morsilli, 635 A.2d 1155, 1163-1164 (R.I. 1994) (holding that the defendant knowingly and willfully violated G.L. 1956 §§ 36-14-5(a) and (d) among other ethics violations). Therefore, this Court finds that the Code of Ethics requires a finding of scienter before the Ethics Commission can assess a civil penalty.
Fourth, the civil penalty does not "promote the traditional aims of punishment" — retribution and deterrence — to an unacceptable degree. Although the Ethics Commission's civil penalty does have punitive and deterrent aspects, Hudson requires that:
 [courts] first ask whether the legislature, `in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' Even in those cases where the legislature `has indicated an intention to establish a civil penalty, [the United States Supreme Court has] inquired further whether the statutory scheme was so punitive either in purpose or effect,' as to `transform what was clearly intended as a civil remedy into a criminal penalty.'
Hudson, 522 U.S. at 99 (quoting Ward, 448 U.S. at 248-249; and RexTrailer Co. v. United States, 350 U.S. 148, 154 (1956)). Although a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose. City of Albuquerque v. One (1) 1984 White Chevy UT, 46 P.3d 94,97 (N.M. 2002). While the civil penalty in the Code of Ethics may deter others from engaging in similar ethics violations in the future, "the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence `may serve civil as well as criminal goals.'"Hudson, 522 U.S. at 105 (quoting United States v. Ursery, 518 U.S. 267,292 (1996)). On its face, the Code of Ethics provides the means to enforce the "highest standards of ethical conduct" among elected officials. G.L. 1956 § 36-14-1. See State v. Astorga, 13 P.3d 468 (N.M. 2000) (stating that revocation of "good time credits" for violation of prison rules has remedial purposes that "speak more to the administrative challenge of effective prison management and less to the goal of individual punishment"). While the Ethics Commission's civil penalties may have effects of deterrence and punishment, these effects are incidental to the penalty and do not override the primarily remedial purpose of the Code of Ethics.
Fifth, the conduct that formed the basis for the civil penalty also laid the foundation for the Defendant's criminal indictment. The Defendant asserts that Counts 3, 4, and 5 embrace the same conduct admitted to before the Ethics Commission. This Court agrees. However,Hudson states that this issue alone arguably is "insufficient to render the money penalties . . . criminally punitive . . . particularly in the double jeopardy context." Hudson, 522 U.S. at 105.
Sixth, this Court may rationally connect the civil penalty to an alternative, remedial, purpose. As articulated in the Declaration of Policy, the purpose of the Code of Ethics, is to regulate Rhode Island's public officials so that they "respect the public trust . . . and not use their position for private gain or advantage." G.L. 1956 § 36-14-1. The civil penalties provided under the Code of Ethics help to serve that purpose. See Kirby, 70 P.3d at 781.
Finally, the imposition of the civil penalty does not appear excessive in relation to the remedial purpose of the Code of Ethics. The Code of Ethics regulates Rhode Island's public officials, who bear the enormous responsibility of upholding the public trust. The purpose of the Code of Ethics is primarily remedial and heavily oriented toward assuring that members of the public are not harmed by the unethical practices of public officials. The civil penalty falls squarely within the adjudicative powers of the Ethics Commission as one of a number of possible civil remedies. See G.L. 1956 § 36-14-13(d). The instant sanction does not seem out of proportion or excessive when considering the legislative view that an essential way to prevent and remedy unethical practices is through an assessment of civil penalties up to $25,000 per violation.
 III. Conclusion under the Hudson Analysis
In light of the two-part Hudson test and its seven guideposts, this Court finds that the Ethics Commission's decision does not implicate double jeopardy for the Defendant. Although the civil penalty assessed by the Ethics Commission fails to pass Guideposts Three and Five, the guideposts, taken in the aggregate, demonstrate that the $130,000 in fines imposed pursuant to the Code of Ethics fulfills the requirements of a civil penalty. Because no single factor is controlling, this Court finds that the civil penalties assessed by the Ethics Commission pass the two-part Hudson test and therefore do not violate any constitutional protections against double jeopardy. This Court is satisfied that the Defendant's argument lacks the requisite "clearest proof" necessary "to override legislative intent and transform what had been denominated a civil remedy into a criminal penalty." Hudson, 522 U.S. at 99 (citingWard, 448 U.S. at 249).
 IV. The Blockburger Analysis
Although this Court finds sufficient grounds under Hudson to deny the Defendant's Motion to Dismiss, the Defendant also asserted that Count One in the State's indictment constituted double jeopardy under the United States Supreme Court decision in Blockburger v.United States, 284 U.S. 299 (1932). Under Blockburger, the Double Jeopardy Clause is not implicated simply because a criminal charge involves "essentially the same conduct" for which a defendant has previously been punished. See, e.g., United States v. Dixon, 509 U.S. 688, 696 (1993);Rutledge v. United States, 517 U.S. 292, 297 (1996). Unless a second proceeding involves the "same offense" as the first, there is no double jeopardy. Under Blockburger's "same-elements" test, two provisions are not the "same offense" if each contains an element not included in the other. Dixon, 509 U.S. at 696.
Count One in the criminal prosecution arises out of Rhode Island's false pretenses statute, G.L. 1956 § 11-41-4.[1] The Ethics Commission penalties at issue in the Defendant's Motion to Dismiss stem from a violation of the Rhode Island Code of Ethics,
G.L. 1956 § 36-14-5(d).[2] The charge of false pretenses requires the State to prove at least one element not required by the Code of Ethics — the "intent to cheat or defraud." This Court finds that Count One also survives the Blockburger analysis and therefore does not constitute double jeopardy.
 V. Conclusion
For all these reasons, this Court denies the Defendant's Motion to Dismiss Counts 1, 3, 4, and 5 of the indictment. The Defendant has failed to meet his burden of proving that the Ethics Commission's civil sanctions constitute a criminal penalty that would bar his prosecution on the grounds of double jeopardy.
[1] G.L. 1956 § 11-41-4: Every person who shall obtain from another designedly, by any false pretense or pretenses, any money, goods, wares, or other property, with intent to cheat or defraud, and every person who shall personate another or who shall falsely represent himself or herself to be the agent or servant of another and shall receive any money or other property intended to be delivered to the person so personated, or to the alleged principal or master of that agent or servant, shall be deemed guilty of larceny.
[2] G.L. 1956 § 36-14-5(d): No person subject to this code of ethics shall use in any way his or her public office or confidential information received through his or her holding any public office to obtain financial gain, other than that provided by law, for him or herself or any person within his or her family, any business associate, or any business by which the person is employed or which the person represents.