May 5, 2021

The Retirement Board of the : 
Employees' Retirement System of
the State of Rhode Island

v. :

Fred L. Randall. :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The Retirement Board of the :
Employees' Retirement System of
   the State of Rhode Island

          v. :

   Fred L. Randall. :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on March 11, 2021, on appeal by the defendant, Fred L. Randall, who seeks review of a Superior Court judgment that revoked his pension benefits and denied his request for return of his retirement contributions paid into the Employees' Retirement System of the State of Rhode Island (the ERSRI), and ordered that retirement payments made to his spouse, Diane Randall, must be applied towards his restitution obligations. The defendant contends on appeal to this Court that the trial justice erred in (1) conditioning Mrs. Randall's receipt of benefits on her assignment of those payments to the defendant's restitution judgment and (2) refusing to apply the defendant's pension contributions towards his restitution

obligations. For the reasons stated in this opinion, we affirm in part and vacate in part the judgment of the Superior Court.

## Facts and Travel

The defendant was an employee of the State of Rhode Island since 1976 and contributed to the ERSRI for approximately thirty-five years. He held various positions, including as a fiscal clerk at the Department of Computer Sciences at the University of Rhode Island (URI); a fiscal clerk in the Department of Chemistry at URI; and a fiscal clerk and senior teller in the Bursar's Office at the Providence Extension Campus of URI. In March 2011, defendant retired from state service and began receiving retirement benefits of approximately $4,300 per month; the payments were reduced to approximately $2,500 per month in November 2014, when defendant became eligible for Social Security benefits. The defendant continued to receive retirement benefits until March 2015 and received a total of $196,007.54 in pension payments during this period.

On July 13, 2012, defendant was charged by way of criminal information with felony embezzlement, in violation of G.L. 1956 §§ 11-41-3 and 11-41-5, and access to a computer for fraudulent purposes, in violation of G.L. 1956 §§ 11-52-2 and 11-52-5. The state alleged that between 2005 and 2011, during the course of his employment, defendant embezzled a significant amount of money from URI. On June 10, 2014, defendant entered a plea of nolo contendere to the

embezzlement charge, and the state dismissed the count charging computer fraud. The defendant was sentenced to twenty years at the Adult Correctional Institutions, with eighteen months to serve, twelve months of home confinement, and the balance suspended, with probation. The defendant was also ordered to pay restitution in the amount of $200,000.

On January 15, 2015, the plaintiff, the Retirement Board of the Employees' Retirement System of the State of Rhode Island (the Retirement Board), initiated this action pursuant to the Public Employee Pension Revocation and Reduction Act, G.L. 1956 chapter 10.1 of title 36 (PEPRRA), seeking a revocation of defendant's pension. The Retirement Board requested a statutory pension revocation and a declaratory judgment that defendant failed to satisfy the condition precedent of rendering honorable service in his public employment and, therefore, that he was not entitled to retirement payments from the ERSRI, or to a return of retirement contributions.

The trial justice conducted a bench trial on the Retirement Board's revocation and declaratory-judgment claims; defendant and Mrs. Randall testified. Their testimony revealed that they have been married since 1975 and at all relevant times resided together at a home in Warwick, Rhode Island. The defendant testified that, from around 2005 until 2011, he embezzled student tuition payments from URI and used the money to feed his gambling addiction at Foxwoods Resort

Casino and Mohegan Sun Casino. He testified that he never made any of the converted funds available to Mrs. Randall and that he never disclosed to his wife that he was stealing money to gamble, but rather that he continuously lied to cover up his activities. Specifically, defendant testified, when the casinos would send him free gifts, he would tell Mrs. Randall that a coworker named Barbara "played big and would use [his] card, so that [is] how [he] got points on [his rewards] card."[1] The defendant also testified that when he was at the casinos without her, he lied to his wife about his whereabouts and told her that he was playing bridge.

During the relevant period, defendant and Mrs. Randall frequented the casinos together approximately once per week. However, Mrs. Randall testified that she would normally shop and play the slot machines, spending between $40 and $60 a night on gambling. Although she and defendant frequently separated while at the casinos, she testified, to her knowledge, defendant was gambling hundreds of dollars, not thousands. Mrs. Randall testified that she did not know that defendant was embezzling funds from URI, nor was there any indication that would have led her to believe he was engaging in inappropriate conduct. Although

---

[1] The testimony revealed that both defendant and Mrs. Randall had rewards cards from Foxwoods, which allowed them to earn points each time they gambled. The defendant testified that he would strategically use his wife's card if he was "just playing a couple of dollars" so as to avoid lowering his card's rating, which was based on how much was spent. Although Mrs. Randall's rewards card allegedly had sums of over $20,000 on it, defendant testified that at least 90 percent of that money was gambled by him, and that any gambling done by his wife was funded by personal money and not the embezzled funds.

Mrs. Randall had access to the family checking account, she testified, she did not know how much was in that account, defendant was responsible for paying the bills, and she was unsure of defendant's salary. Mrs. Randall admitted that she "would get a little nervous" about the money expended on gambling, but she added that she "never really questioned him[.]" Rather, she maintained that she only became aware of defendant's thievery and lies when the police came calling. The defendant never admitted to his wife that he was embezzling money from URI.

In May 2014 Mrs. Randall inherited approximately $600,000 from her father's estate. Approximately $200,000 was spent on home improvements, a new automobile, and debt repayment, including credit-card balances, a home equity loan, and outstanding bills. Mrs. Randall also used her inheritance to fund a retirement account, a money market account, and an account for her grandson. Mrs. Randall testified that she works part-time at a day-care center, earning approximately $6,500 per year. The monthly home expenses, such as taxes, utilities, sewer fees, phone, gas, groceries, water, and car, homeowners, and dental insurance are approximately $1,680 per month.[2]

After the testimony concluded, the state indicated its intention to offer additional documentary evidence, and both parties rested. Posttrial memoranda

_____

[2] Mrs. Randall testified that she was solely responsible for determining how her inheritance was spent; at the time of trial she had $180,000 in a savings account and $100,000 in her retirement account.

were submitted, and the trial justice issued a written decision. The trial justice determined that a complete revocation of defendant's pension was appropriate pursuant to PEPRRA,[3] but that Mrs. Randall was an innocent spouse and was entitled to "some pension payments[.]" However, the trial justice also found that "the present financial condition of [defendant] limits the likelihood that [URI] will ever be made whole[,]" and, therefore, he directed that URI "be timely compensated as a condition of payments to" Mrs. Randall. Accordingly, Mrs. Randall was awarded "ongoing pension payments, commencing on January 1, 2017, in the amount of $1,667 per month, on the condition that all of these payments be forwarded promptly, or assigned in advance," toward her husband's restitution debt. The trial justice ordered that upon full payment of the defendant's restitution debt, Mrs. Randall's pension payments would be "reduced to $500 per month and paid directly to her."

The trial justice also denied defendant's motion for return of contributions in an order issued on April 11, 2018, finding that PEPRRA "expressly forbids the return of contributions to the retiree if restitution is still due" and that the court had "not been asked to transfer the funds to satisfy restitution." A single corrected

---

[3] The defendant has conceded that the complete revocation of his pension benefits is not at issue on appeal.

judgment entered on May 24, 2018, reflecting the trial justice's various rulings.[4]

This appeal followed.[5]

## Standard of Review

"This Court reviews questions of statutory interpretation *de novo*." *In re Estate of Chelo*, 209 A.3d 1181, 1184 (R.I. 2019). It is well settled that "[i]n matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Alessi v. Bowen Court Condominium*, 44 A.3d 736, 740 (R.I. 2012) (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001)). If "the language of a statute is clear and unambiguous, this Court must

---

[4] On May 23, 2019, this Court remanded this case to the Superior Court after discovering that the electronic filing system contained two judgments: the first signed and dated by the trial justice on May 2, 2018, and the second signed and dated by the trial justice on May 24, 2018. The May 24, 2018 judgment was captioned as a "Corrected Judgment[,]" and noted that the earlier judgment "was signed, but oddly not recorded into the [c]ourt's computer filing and docketing system." The remand order directed the Superior Court to develop "a record containing findings as to the travel of this case, including when and how the first judgment was filed on the electronic docket." In accordance with the remand order, the trial justice held an evidentiary hearing on September 18, 2019, during which the Superior Court administrative manager testified regarding how the docket came to reflect two judgments. After reviewing the evidentiary record developed and the findings of fact made by the trial justice, we are satisfied that the instant appeal is timely.

[5] The parties jointly petitioned this Court for a stay of enforcement of the judgment, maintaining that "issuing payments prior to the resolution of the issues on appeal may have tax implications to [d]efendant's spouse, and that there may be an impact on eligibility for health insurance, as well as administrative complexities associate[d] with the Retirement System issuing the payments." This Court granted the joint motion to stay enforcement of the judgment pending resolution of the issues on appeal on February 8, 2019.

interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Waterman v. Caprio*, 983 A.2d 841, 844 (R.I. 2009)).

### Mrs. Randall's Obligation to Forward Pension Payments Towards Defendant's Restitution Debt

The defendant first contends that the trial justice's decision to condition Mrs. Randall's award of pension payments upon her forwarding those payments to satisfy her husband's restitution obligations was erroneous and prohibited by statute and this Court's jurisprudence. Specifically, defendant argues, because the trial justice found Mrs. Randall to be an innocent spouse, PEPRRA does not envision that an innocent spouse's pension be applied to satisfy restitution.

The Retirement Board maintains that the trial justice did not err in conditioning the payment of pension benefits to Mrs. Randall upon the assignment of those payments to URI because "PEPRRA clearly establishes the power of the Superior Court to use its discretion to create a remedy as justice may require." Accordingly, the Retirement Board argues that the trial justice's decision did not directly order that defendant's pension payments be made to URI, but rather "conditioned the spousal payment to Mrs. Randall on *her* payment to URI," which, according to the Retirement Board, accords with the language and intent of PEPRRA. We disagree.

As we have previously noted,

> "[t]he General Assembly enacted PEPRRA in 1992 to provide the Retirement Board with a statutory mechanism to initiate a civil action to revoke or reduce a public official/employee's retirement benefits whenever such person * * * 'is convicted of or pleads guilty or nolo contendere to any crime related to his or her public office or public employment.'" *Retirement Board of Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 279-80 (R.I. 2004) (quoting § 36-10.1-3(b), as enacted by P.L. 1992, ch. 306, art. 1, § 8).

However, PEPRRA also sets forth the primary purpose of a retirement pension, which "is 'to provide for the family in the future.'" *Id.* at 291 (quoting *Thompson v. Thompson*, 642 A.2d 1160, 1164 (R.I. 1994)). Accordingly, § 36-10.1-3(d) provides that:

> "If the [S]uperior [C]ourt determines that the retirement or other benefits or payments of a public official or public employee should be revoked or reduced under this chapter, it may, in its discretion and after taking into consideration the financial needs and resources of any innocent spouse or domestic partner, dependents and/or designated beneficiaries of the public official or public employee, order that some or all of the revoked or reduced benefits or payments be paid to any innocent spouse or domestic partner, dependent or beneficiary as justice may require."

This provision of PEPRRA—based on principles relative to the equitable distribution of marital property—recognizes that "an innocent spouse has a cognizable property interest in a vested pension," such that the Superior Court

may, in its discretion, award "some or all of the total benefits to an innocent spouse." *DiPrete*, 845 A.2d at 292.

However, under the plain language of § 36-10.1-3(d), revoked or reduced pension benefits or payments can only be paid to an innocent spouse, domestic partner, dependent, or beneficiary. *See Retirement Board of Employees' Retirement System of Rhode Island v. Azar*, 721 A.2d 872, 877 (R.I. 1998) ("Although PEPRRA grants the trial justice substantial discretion to determine whether to revoke or reduce a public employee/official's public pension after he or she has been convicted of a crime related to public employment, it authorizes payment of the revoked or reduced pension funds only to a pensioner's innocent spouse, dependents, and/or designated beneficiaries."). Indeed, we have recognized that "[b]y specifying only three types of payees who may receive a public employee/official's revoked or reduced pension benefits, * * * the General Assembly manifested its intent to exclude other possible payees from receiving" that person's pension benefits. *Id.*

The Retirement Board's argument that the trial justice's decision was correct because the pension payments are being made to Mrs. Randall, who must then forward them to URI—rather than the pension payments being forwarded directly

to URI—presents a distinction without a difference.[6]  "[I]n deciding whether the trial justice acted within his or her discretion in fashioning an appropriate PEPRRA order[,]" "we look to the identity of the final payee of the benefits[.]" *Azar*, 721 A.2d at 878.  Here, the final payee of defendant's pension payments would be URI, which does not qualify as an innocent spouse, dependent, or beneficiary as required by the plain language of PEPRRA.

The Retirement Board also makes much of the trial justice's observations that Mrs. Randall received "some benefit from the illicit scheme, as minor as it may or may not be[.]"  However, the trial justice's ultimate finding was that Mrs. Randall is an innocent spouse, and the Retirement Board has not appealed from that factual determination.  There are no degrees of innocence under PEPRRA: a spouse is either innocent or not.  Nor is PEPRRA intended to be punitive in its application; rather, it is a remedial enactment intended to be equitable in nature. "If justice is to be done, no court can overlook an innocent spouse's entitlement to retirement benefits based on his or her familial contributions and the economic partnership theory of marriage, which is firmly established in this state." *DiPrete*, 845 A.2d at 290.  PEPRRA cannot be used to punish Mrs. Randall, the innocent spouse, for the misdeeds of her husband; she cannot be forced to forward the payments that she is awarded to the victim of her husband's crime.

---

[6] The tax implications for Mrs. Randall and the impact on her eligibility for health insurance were overlooked by the trial justice.

While the trial justice seemingly crafted a Solomonic remedy to address the tension between the award of pension benefits to an innocent spouse while the restitution owed to the victim of her husband's crime remains outstanding, the remedy quite plainly violates PEPRRA. Accordingly, we vacate that portion of the judgment ordering Mrs. Randall to forward any payments to URI.

## Return of Contributions

The defendant also argues that the trial justice erred in failing to apply his pension contributions to his restitution obligations, and argues that "his pension contributions of $73,569.84 should be transferred to pay down his restitution obligations." Specifically, defendant contends that the trial justice improperly concluded that the court had "not been asked to transfer the funds to satisfy restitution."

On April 11, 2018, the trial justice entered an order denying defendant's motion for return of his pension contributions.[7] The trial justice concluded that defendant was not entitled to return of his pension contributions because restitution was still due and owing, and that the court had not been asked to direct the contributions towards defendant's restitution obligations.

In accordance with § 36-10.1-4(a), "[a]ny * * * public employee whose retirement or other benefits or payments are revoked * * * shall be entitled to a

---

[7] The order indicated that the parties had agreed to submit memoranda on the issue and forgo further evidentiary hearings or oral argument.

return of his or her contribution paid into the relevant pension fund(s), without interest." However, no return of contributions shall be made while the employee has any unsatisfied judgments or orders "for the payment of restitution for losses incurred by any person as a result of the subject crime related to the * * * public employment." Section 36-10.1-4(c). If there is outstanding restitution due, the Superior Court "may order that any funds otherwise due to the * * * public employee as a return of contribution * * * be paid in satisfaction of the judgment or order." *Id.*

The provisions of § 36-10.1-4 involving the return of contributions after benefits are revoked and prohibiting return if restitution is due and owing are mandatory. *See Begg v. Alexander-Scott*, 242 A.3d 23, 29 (R.I. 2020) ("use of the word 'shall' contemplates something mandatory or the imposition of a duty") (quoting *In re Estate of Chelo*, 209 A.3d at 1184)). However, § 36-10.1-4(c) provides that the Superior Court "may order" that any return of contributions be paid to satisfy outstanding restitution. This Court has recognized the "principle of statutory construction that the use of the term 'may' denotes a permissive, rather than an imperative, condition." *Downey v. Carcieri*, 996 A.2d 1144, 1151 (R.I. 2010).

Here, the trial justice was required to deny a return of contributions to the defendant, as restitution debt was still outstanding. Although it was within the trial

- 13 -

justice's discretion to order that any return of contributions be paid to satisfy the defendant's outstanding restitution debt, he was not required to do so. The trial justice concluded that the defendant's return of contributions would not be applied to satisfy restitution because "[t]he [c]ourt has not been asked to transfer the funds to satisfy restitution." We discern nothing in the statutory language requiring a public employee to request that his or her return contributions be applied towards the satisfaction of outstanding restitution. Rather, § 36-10.1-4(c) clearly vests the Superior Court with discretion to determine whether "funds otherwise due to the * * * public employee as a return of contribution * * * be paid in satisfaction of the" outstanding restitution. As such, we are of the opinion that the trial justice erred in declining to apply the defendant's pension contributions to his restitution obligations merely because the defendant failed to make that specific request. Accordingly, the matter is remanded to the Superior Court with directions to consider whether the defendant's return of contributions should be applied towards his outstanding restitution, in accordance with § 36-10.1-4(c).

### Conclusion

For the reasons set forth in this opinion, we hold as follows:

(1) We affirm that portion of the judgment that revokes, in full and on a permanent basis, the defendant's pension benefits.

(2) We affirm that portion of the judgment that declares that Mrs. Randall is an innocent spouse and is awarded pension payments.

(3) We vacate that portion of the judgment that directs Mrs. Randall to pay her payments as an innocent spouse towards the defendant's restitution obligations, and remand this case for a recalculation of Mrs. Randall's benefits based on our decision.

(4) We vacate that portion of the judgment that declined to apply the defendant's pension contributions to his restitution obligations merely because a specific request was not made, and we remand this case with directions for the Superior Court to consider whether the defendant's return of contributions should be applied towards his outstanding restitution.[8]

The record shall be remanded to the Superior Court with directions to enter a new judgment consistent with this opinion.

---

[8] Because we are remanding with respect to the recalculation of benefits Mrs. Randall is entitled to receive, any return of contribution ordered to be paid in satisfaction of the defendant's outstanding restitution—should the trial justice so direct—must be in an amount inversely proportionate to the amount awarded to Mrs. Randall. *See Retirement Board of Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 297 (R.I. 2004).



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | The Retirement Board of the Employees' Retirement System of the State of R.I. v. Fred Randall. |
| **Case Number** | No. 2018-0212-Appeal.<br>(PC 15-203) |
| **Date Opinion Filed** | May 5, 2021 |
| **Justices** | Suttell, C.J, Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Michael P. Robinson, Esq. |
| | For Defendant:<br><br>Mark A. Fay, Esq. |