DECISION
Before the Court for decision is a consolidated action concerning a number of common legal questions that must be resolved before addressing the merits of each individual case. Specifically, this consolidated action centers around three threshold issues of first impression regarding the City of Providence's Honorable Service Ordinance (the "HSO"). See City Code of Ordinances, § 17-189.1. The first issue requires a determination of whether a criminal conviction is needed before the Retirement Board of the Employees Retirement System of the City of Providence (the "Board") is authorized to take action[1] to revoke or reduce municipal pension benefits pursuant to the HSO. The second issue involves determining whether this Court has jurisdiction to review civil actions filed by the Board pursuant to section (a)(5) of the HSO. Lastly, if it is established that the Court does have jurisdiction to review such matters, the Court must ascertain the appropriate standard of review to apply when reviewing civil actions filed pursuant to section (a)(5) of the HSO.
 II The Scope of the HSO
To date, four of the five individuals[2][3] in the above referenced actions have had their municipal pensions either revoked or substantially reduced by the Board. Two of the cases — involving defendants Anthony E. Annarino ("Mr. Annarino") and Frank E. Corrente ("Mr. Corrente") — involve actual criminal convictions and implicate Board *Page 3 
action pursuant to section (a)(4) of the HSO; and two other cases — involving defendants Urbano Prignano, Jr. ("Mr. Prignano, Jr.") and Kathleen Parsons ("Ms. Parsons") — involve findings of dishonorable service in the absence of actual convictions and implicate Board action pursuant to section (a)(1) of the HSO. Finally, in the fifth and last to be filed case involving Mr. Ryan, he filed for injunctive and declaratory relief before the Board had a chance to act. Consequently, hearings and Board action have yet to take place with respect to Mr. Ryan's pension.[4]
Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan collectively maintain that the conviction[5] of a crime relating to an employee's public employment is a necessary prerequisite for Board action under the HSO to revoke or reduce a municipal pension. Conversely, the Board asserts that based on the plain language of the HSO, it may revoke or reduce retirement benefits whenever an employee fails to engage in "honorable service"; not just in specific situations where the employee has been convicted of a crime related to his or her public employment. Before addressing the merits of these arguments, however, some brief background information regarding the HSO and its genesis is helpful.
 A The Common Law Rule and the Concept of "HonorableService"
Prior to the enactment of the State's Public Employee Pension Revocation and Reduction Act, G.L. 1956 § 36-10.1-3 ("PEPRRA"), and the HSO, the principal source *Page 4 
of Rhode Island law on pension revocation and reduction was found in the case of In re Almeida, 611 A.2d 1375 (R.I. 1992). InAlmeida, the Rhode Island Supreme Court considered "honorable and faithful service to be implicitly required to receive a pension in all facets and positions of public service."Id. at 1383. Specifically, in Almeida, the Court found that "a requirement of honorable service is commonsensical in relation to the trust and confidence vested in those persons holding positions in public service," and was "so fundamental to those individuals to whom it pertains that it need not be expressly stated to be required." Id. at 1383. Further, the Almeida Court made clear that "a pension is to be awarded for honorable service only [and the] failure to meet this standard may result in its being removed." Id. at 1384
Of particular import is the fact that the Almeida Court held that a criminal conviction was not a prerequisite for divestiture of an employee's pension benefits, noting that "we need not address the disposition of the criminal charges that were pending against petitioner because our decision is based on the acts of misconduct as alleged by the commission to which he has admitted."Id. 1379, n. 3. This significant detail has been emphasized in a number of succeeding cases. See e.g., Smith v. RetirementBoard, 656 A.2d 186, 189 (R.I. 1995) ("[T]he justice in Almeida had failed to meet the requisite `honorable service' not because criminal charges pended against him but because he admitted to the acts of misconduct").[6]
Despite the Almeida Court's holding that a criminal conviction was not a prerequisite for divestiture of pension benefits, however, the Court elucidated that it "did *Page 5 
not intend to suggest that upon committing misconduct, one automatically forfeits pension benefits." Id. 1387. As an alternative, the Court promoted a balancing approach and the consideration of particular enumerated factors, which were to be "weighted, balanced, and considered in reaching the major purposes underlying public pensions — to induce people to enter public employment and continue faithful and diligent employment and to furnish public employees with employment stability and financial security." Id.[7] In summation, the law on pension revocation and reduction in Rhode Island and the City of Providence prior to the enactment of PEPRRA and the HSO made honorable service a prerequisite to receipt of a pension, and permitted the applicable retirement board to revoke or reduce a public employee's pension if he or she served dishonorably, even if the employee was not convicted of any crime.
 B PEPRRA and the HSO
In January of 1993, the General Assembly enacted PEPRRA, and since that time, the Rhode Island Supreme Court has made it clear that PEPRRA was intended to supersede Almeida and "[O]nly a conviction or plea of guilty or nolo contendere to one of the felonies enumerated in the statute would trigger the revocation or reduction of a *Page 6 
public employee's retirement benefits."[8] Smith v. RetirementBoard, 656 A.2d 186, 190 *Page 7 
(R.I. 1995). PEPRRA, however, never applied to members of the City of Providence's retirement system — such as Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan in the instant matter. See
G.L. 1956 § 36-10.1-2(b) (defining "public official" and "public employee" under PEPRRA); see also
G.L. 1956 § 45-21-4(a) (providing the methodology by which municipalities can opt into the Municipal Employees' Retirement System, which the City has not done).[9] Consequently, for members of the City of Providence's retirement system, the common law rule requiring "honorable service," as articulated inAlmeida, remained the law following PEPRRA. *Page 8 
In 1999, six years following the enactment of PEPRRA, the Providence City Council ("City Council") passed its own provision — the HSO — to be made applicable to beneficiaries of the City of Providence's retirement system. See City Code of Ordinances § 17-189.1. The HSO provides in its entirety as follows:
 Honorable service, revocation or reduction of retirement benefits of employees committing crimes related to public employment.
 a) General provisions:
 (1) Payment of an employee's retirement allowance or annuity or other benefit or payments as provided in chapter 17 shall be for honorable service only.
 (2) For purposes of this section, "crime related to his or her public employment" shall mean any of the following:
 b. The committing, aiding or abetting of an embezzlement of public funds;
 c. The committing, aiding or abetting of any felonious theft by a public employee from his or her employer;
 d. Bribery in connection with employment of a public employee; and
 e. The committing of any felony by a public employee who willfully, and with the intent to defraud, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of power, rights, privileges, duties, or position of his or her public office or employment.
 (3) For purposes of this section, "public employees" or "employee" shall mean any current or former city elected official, or any appointed official or employee of the city, or of a city board, commission or agency, who is otherwise entitled to receive retirement allowance or annuity or *Page 9 
other benefit or payment of any kind pursuant to chapter 16.
 (4) Revocation or reduction authorized.
 Notwithstanding any other provision of law, any retirement allowance or annuity or other benefit or payment of any kind to which an employee is otherwise entitled to under chapter 17 shall be revoked or reduced in accordance with the provisions of this section if such employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment. Any such conviction or plea shall be deemed to be a breach of the employee's contract with his or her employer.
 (5) Hearing: civil action. Whenever any employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment, the retirement board shall conduct a meeting, with the employee having the opportunity to be heard, to determine if a recommendation of revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted. If the retirement board determines that revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted, the retirement board shall initiate a civil action in the superior court for the revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under chapter 17.
 (6) For purposes of this section, "pleads guilty or nolo contendere" shall not include any plea of guilty or nolo contendere which does not result in a conviction by virtue of G.L. 1956 Sec. 12-10-12 or 12-18-3, as amended. Id. *Page 10 
 C Determining Whether the Conviction of a Crime Relating to anEmployee's Public Employment is a Condition Precedent to BoardAction Pursuant to the HSO
As alluded to previously, Mr. Prignano, Ms. Parsons, and Mr. Ryan collectively argue that a criminal conviction is a required condition precedent to Board action to revoke or reduce a municipal pension under the HSO. In particular, they argue that section (a)(1) of the HSO, which provides that "Payment of an employee's retirement allowance or annuity or other benefit or payments as provided in chapter 17 shall be for honorable serviceonly," is nothing more than an introductory clause or a policy statement. See City Code of Ordinances § 17-189.1, § (a)(1) (emphasis added). Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan assert it is sections (a)(4) and (a)(5)[10] that define the circumstances under which the Board is authorized to take action towards reduction or revocation of an employee's municipal pension. Accordingly, they essentially maintain that, based on the language of section (a)(4), revocation or reduction of an employee's municipal pension for dishonorable service under the HSO is authorized only in instances where the employee has been convicted of a crime related to his or her public employment.[11][12]
The Board, on the other hand, argues that a criminal conviction is not a mandatory prerequisite for Board action to revoke or reduce a municipal pension pursuant to the *Page 11 
HSO. Specifically, the Board maintains that while the plain language of section (a)(4) deems the conviction of an employment related crime a per se breach of an employee's contract of employment — making Board action mandatory[13][14] — nowhere in the ordinance is it explicitly stated, or even suggested, that such a conviction is a prerequisite to the finding of a breach and Board action inevery instance. The Board argues that in cases where there is no criminal conviction, its power to act is pursuant to section (a)(1), which, as noted above, expressly conditions all retirement benefits upon the rendering of "honorable service."[15]See City Code of Ordinances § 17-189.1, § (a)(1) (emphasis added).
In light of the divergent opinions regarding the correct interpretation and scope of the HSO, the Court is faced with the task of analyzing the HSO. Accordingly, in order to resolve these opposing arguments, the Court must first employ well-settled principles of *Page 12 
statutory interpretation to determine the true meaning of the Ordinance.[16] The Court must begin its analysis by examining "the plain and ordinary meaning of the [ordinance] language" at issue.[17] Henderson v. Henderson,818 A.2d 669, 673 (R.I. 2003). "When the language of a[n] [ordinance] is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and [the court] must give the words of the statute their plain and obvious meaning. . . . Such meaning is presumed to be the one intended by the [City Council], and the [ordinance] must be applied literally." McGuirl v. Anjou Intern. Co.,713 A.2d 194, 197 (R.I. 1998) (quoting Wayne DistributingCo. v. R.I. Comm'n for Human Rights,673 A.2d 457, 460 (R.I. 1996)). "However . . . when the language of a statute is not susceptible to literal interpretation, it is ambiguous, and [the court] must look to give meaning to the intent of the [legislative body]." New Eng. Dev., LLC v. Berg,913 A.2d 363, 371 (R.I. 2007) (citing Retirement Board ofEmployees' Retirement System of State v. DiPrete,845 A.2d 270, 279 (R.I. 2004)). It is well-settled that "[A] statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more senses." See Sutherland,Statutes and StatutoryConstruction § 46.04, at 145-146 (N. Singer 6th
ed. 2000).
Moreover, it is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute. See Merciol v. New England *Page 13 Tel. Tel. Co., 290 A.2d 907 (R.I. 1972); see also RhodeIsland Chamber of Commerce v. Hackett,411 A.2d 300, 303 (R.I. 1980) ("In construing a statute, [a] court must give effect to all parts of the statute, if reasonably possible, in keeping with its declared purpose.") A statute should be interpreted so that effect is given to all its provisions, so that no part will be inoperative, superfluous, or insignificant.See Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987) (holding that "a statute or enactment may not be construed in a way . . . if at all possible, to render sentences, clauses, or words surplusage"). With these guiding precepts in mind, the Court must determine whether the existence of a criminal conviction is required before the Board may take action to reduce or revoke an employee's municipal pension pursuant to the HSO.
 A The Language of the HSO in its Entirety
In analyzing the contents of the HSO in its entirety, the Court is of the opinion that adopting Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan's contention would be inconsistent with the fundamental intent of the Ordinance. The Court notes that the title of the Ordinance reads as follows, "Honorable service, revocation or reduction of retirement benefits of employees committing
crimes related to public employment." See City Code of Ordinances § 17-189.1 (emphasis added). The term "conviction" is conspicuously absent from the descriptive opening language of the ordinance and in its place is the phrase "committed," which is patently different in the sense that one can certainly have committed a crime without having actually been convicted of a crime.[18] *Page 14 
The noticeable use of the term "committed" as opposed to "conviction" in the opening sequence of the Ordinance is further buttressed by the language contained in section (a)(2), which provides a definition of what constitutes a crime related to an employee's public employment for purposes of the HSO:
 (2) For purposes of this section, "crime related to his or her public employment" shall mean any of the following:
 a. The committing, aiding or abetting of an embezzlement of public funds;
 b. The committing, aiding or abetting of any felonious theft by a public employee from his or her employer;
 c. Bribery in connection with employment of a public employee; and
 d. The committing of any felony by a public employee who willfully, and with the intent to defraud, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of power, rights, privileges, duties, or position of his or her public office or employment. Id. § (a)(2) (emphasis added).
The Court finds it significant that nowhere in this section is the term "conviction" ever referenced. If the intent behind the creation of the HSO was to sanction Board action to revoke or reduce an employee's municipal pension only in circumstances where an employee has been convicted of a crime related to his or her public employment — which is the crux of Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan's argument[19] — the Court *Page 15 
finds it quite peculiar that such an edict was notexplicitly provided for anywhere within the text of the Ordinance. In applying the Ordinance as written, the Court finds that if the City Council intended the HSO to permit Board action to revoke or reduce an employee's municipal pension only in situations where the employee was convicted of a crime related to his or her public employment — as is the case with PEPRRA — the drafters would have explicitly provided for such within the text of the ordinance.
 B The Plain Meaning of the Term "Honorable Service"
HSO section (a)(1) begins by stating that "[P]ayment of an employee's retirement allowance or annuity or other benefit or payments as provided in [this chapter] shall be for honorableservice only." Id. § (a)(1) (emphasis added). This Court is of the opinion that, on its face, the phrase "honorable service" is not ambiguous. In determining the plain and ordinary meaning of "honorable service" within the specific context of pension revocation and reduction, this Court looks to the common law concept of "honorable service" set forth inAlmeida[20] — the law governing City of Providence pension revocation and reduction matters prior to the enactment of the HSO. Thus, pursuant to the characterization of "honorable service" provided by the Court in Almeida, the plain meaning of the term, as used in section (a)(1) of the HSO, pertains to acts of misconduct — irrespective of whether there is a conviction — that may warrant reduction or revocation of an employee's municipal pension. See Almeida,611 A.2d at 1379, n. 3. *Page 16 
In arguing that a criminal conviction is required in all cases before a public employee's municipal pension can be reduced or revoked, Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan focus on sections (a)(4) through (a)(6)[21] of the HSO. However, a plain reading of those sections, in conjunction with section (a)(1), does not create any significant internal tension or inconsistency regarding the plain meaning of the term "honorable service." Section (a)(4) simply provides that in situations where an employee has been convicted of an employment related crime, the Board "shall" take some action — i.e., a meeting — to determine whether a recommendation of revocation or reduction of the employee's pension is warranted, and section (a)(5) merely sets forth the procedures that must be followed in doing so. Alternatively, section (a)(1) is more permissive — in contrast with the obligatory nature of section (a)(4) — and provides the Board with the power to take action to determine whether revocation or reduction of a public employee's municipal pension is warranted if the employee has failed to engage in "honorable service" — irrespective of whether the employee has been convicted of any crime related to his or her public employment.[22] It is readily apparent to the Court that *Page 17 
section (a)(1) and sections (a)(4) through (a)(6) of the HSO cover entirely different situations and do not create any sort of internal conflict when read in conjunction with each other.
Finally, Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan maintain that section (a)(1) — and in particular, the term "honorable service" contained therein — of the HSO is merely introductory, with no real significance or meaning. As expressed previously, however, in construing a statute or ordinance, the Court must "presume that the General Assembly intended to attach significance to every word, sentence and provision of a statute." RetirementBoard of the Employees Retirement System of the State of RhodeIsland v. DiPrete, 845 A.2d 270, 279 (R.I. 2004); see alsoMerciol, 290 A.2d 907; Rhode Island Chamber of Commerce,411 A.2d at 303; Brennan 529 A.2d at 637. Cognizant of this fundamental precept of statutory construction, the Court finds that the term "honorable service" contained in section (a)(1) of the HSO has a plain meaning consistent with the definition expressed by the Rhode Island Supreme Court in Almeida.[23] This plain meaning is buttressed by a reasonable examination of the language of the Ordinance as a whole. To conclude otherwise, as advocated by Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan, would fail to attribute proper importance and meaning to all of the words used within the Ordinance. As such, the Court concludes that a conviction of an employment related crime is not a necessary prerequisite for Board action to revoke or reduce a public employee's municipal pension pursuant to the HSO. *Page 18 
 III Jurisdiction
It is axiomatic that jurisdiction over the subject matter is an essential element of any judicial proceeding. See Paolino v.Paolino, 420 A.2d 830, 833 (R.I. 1980). Thus, in this matter, a threshold issue is that of the Court's jurisdiction to hear issues pertaining to action taken by the Board pursuant to the HSO. In Rhode Island, the Superior Court "[I]s statutory in origin and derives its [jurisdictional] powers from statutes duly enacted by the Legislature." See State v. Briggs,934 A.2d 811, 815 (R.I. 2007) (citing State v.DiStefano, 764 A.2d 1156, 1167-68 (R.I. 2000)).[24] To that end, the Legislature has provided the Superior Court with exclusive jurisdiction over equity actions, [25][26] as well as jurisdiction over all actions at law where the amount in controversy is in excess of ten thousand dollars ($10,000), and "concurrent original jurisdiction with the district court in *Page 19 
all other actions at law in which the amount in controversy exceeds the sum of five thousand dollars ($5,000) and does not exceed ten thousand dollars ($10,000)."[27] Further, it should also be noted that under the Rhode Island Uniform Declaratory Judgment Act ("UDJA"), the Superior Court has the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."See section 9-30-1.[28] The UDJA provides the Superior Court with a broad grant of original jurisdiction to determine the rights, status, or other legal relations of any person that may be affected by a statute, municipal ordinance, contract or franchise. Seeid. section 9-30-2;[29] see also Canario v. Culhane,752 A.2d 476, 478-79 (R.I. 2000); Roch v. Garrahy,419 A.2d 827, 830 (R.I. 1980). *Page 20 
 A The Superior Court, as a Court of Exclusive Jurisdiction ofEquity Actions Pursuant to § 8-2-13, is the Appropriate Venuefor Civil Actions Brought by the Board under the HSO
Until 1980, the General Assembly had exclusive authority to legislate retirement benefits for City of Providence employees through the enactment of public laws such as the Retirement Enabling Act, P.L. 1923, ch. 498, which sets forth a "comprehensive system of contributions, benefits, and regulations relating to pensions to be paid to firefighters, police officers, and civilian employees of the City." See Retirement Board v. Arena,660 A.2d 721, 724 (R.I. 1995) (citing Betz v. Paolino,605 A.2d 837, 838 (R.I. 1992)); see also Arena v. City ofProvidence, 919 A.2d 379, 382 (R.I. 2007) ("Originally, it was within the General Assembly's exclusive authority to legislate retirement benefits for city employees by enacting public laws.") After the enactment of the Providence Home Rule Charter ("Charter") in 1980, however, the City Council replaced the General Assembly as the legislative authority for the establishment and control of the municipal pension system. See Arena, 919 A.2d at 382. Subsequent to the enactment of the Charter, the City Council established the Board, which is responsible for administering and managing the municipal employees' retirement system. The general authority of the Board is set forth under Section 908(b) of the Providence Home Rule Charter[30] and Providence Code of Ordinances, § 17-183(1).[31] Finally, in 1999, the City Council *Page 21 
amended Chapter 17 of Article VI of the Code of Ordinances of the City of Providence by adding the HSO.
Prior to the enactment of the Charter, the creation of the Board, and the addition of the HSO, the Superior Court exercised its broad general equity jurisdiction over municipal pension disputes.See e.g., Trice v. City of Cranston,297 A.2d 649 (R.I. 1972) (city firefighters' action regarding their entitlement to reduction in eligibility time required for longevity pension); Marro v. General Treasurer of the City ofCranston, 273 A.2d 660 (R.I. 1971) (city police lieutenant's action regarding amount of pension following involuntary retirement); Beebe v. Fitzgerald, 262 A.2d 625 (R.I. 1970) (city police officer challenges amount of pension awarded following retirement). Significantly, this Court finds that despite the enactment of the Charter, the establishment of the Board, and the addition of the HSO, the Superior Court has not been divested of its previously existing equity jurisdiction over municipal pension matters. According to G.L. 1956 § 8-2-13, "the superior court shall, except as otherwise provided by law, have exclusive originaljurisdiction of suits and proceedings of an equitable character andof statutory proceedings following the course of equity." G.L. 1956 § 8-2-13 (emphasis added). Since the enactment of the Charter in 1980, the General Assembly has not passed any law or statute purporting to strip the Superior Court of its equity jurisdiction over municipal pension disputes. Further, both the HSO and its state counterpart, *Page 22 
PEPRRA, specifically recognize the Superior Court's pre-existing jurisdiction over pension disenfranchisement matters by expressly requiring the respective retirement boards to commence civil actions in the Superior Court to implement any degree of revocation or reduction of pension benefits.[32][33]
 B Jurisdiction under the Uniform Declaratory JudgmentAct
In addition to its general equity jurisdiction, this Court also has jurisdiction to hear matters brought under the HSO pursuant to the Uniform Declaratory Judgment Act (UDJA). A declaratory judgment is a means by which a party can petition the Court for a declaration of rights, status, or other legal relations when such determinations revolve around a statute — or as is the case in the instant matter, an ordinance. See section 9-30-1 et seq . The essential purpose behind the UDJA is to "settle and [] afford relief from uncertainty and insecurity with regard to rights, status, and other legal relations." Section § 9-30-12. Accordingly, pursuant to the UDJA "the Superior Court has jurisdiction to construe the rights and responsibilities of any party arising from a statute [or ordinance]. . . ." Canario v. Culhane,752 A.2d 476, 478-79 (R.I. 2000); see also section 9-30-1.
In particular, § 9-30-2 of the UDJA provides in pertinent part:
 Any person . . . whose rights, status or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of . . . validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." Section 9-30-2 (emphasis added). *Page 23 
As the Rhode Island Supreme Court articulated in Canario, "[The UDJA] gives a broad grant of jurisdiction to the Superior Court to determine the rights of any person that may arise under [an ordinance] not in its appellate capacity but as part of its original jurisdiction. Canario, 752 A.2d at 479 (citing Roch v.Harrahy, 419 A.2d 827, 830 (R.I. 1980)). The broad discretion granted by the UDJA "[A]llow[s] the trial justice to `facilitate the termination of controversies.'" Bradford Assocs. V. R.I. Div. ofPurchases, 772 A.2d 485, 489 (R.I. 2001) (quoting CapitalProperties, Inc. v. State, 749 A.2d 1069, 1080 (R.I. 1999);see also Canario, 752 A.2d at 476. An action brought pursuant to the act invokes the original, rather than appellate, jurisdiction of the Superior Court. Bradford Assocs., 772 A.2d at 489;see also Canario, 752 A.2d at 479. Further, declarations made by the Superior Court pursuant to the UDJA "shall have the force and effect of a final judgment or decree." Id.
The Rhode Island Supreme Court's decision in Canario
regarding the scope of the Superior Court's jurisdiction under the UDJA is directly applicable to the instant matter. InCanario, an injured Rhode Island State Police lieutenant ("Lieutenant Canario") applied for a disability pension to which he claimed he was entitled pursuant to G.L. 1956 § 42-28-21(a).See Canario, 752 A.2d at 477. After conducting an investigation into the matter, Colonel Edmond S. Culhane, Jr. (the "Superintendent") concluded — without a hearing — that Lieutenant Canario's injury was not work-related.Id. at 478. Accordingly, the Superintendent denied Lieutenant Canario's request for a disability pension. Id. Lieutenant Canario subsequently filed an action in the Superior Court in which he asserted that he was entitled to a disability pension.Id. Following a bench trial on the merits, the trial justice upheld the Superintendent's decision. Id. After bringing an *Page 24 
unsuccessful motion for a new trial, Lieutenant Canario filed an appeal from the Superior Court judgment with the Rhode Island Supreme Court. Id. At oral argument, counsel for the Superintendent challenged the jurisdiction of the Superior Court and contended that the Superior Court lacked subject matter jurisdiction to review the decision of the Superintendent because § 42-28-21 was silent on the issue of judicial review.Id. In considering this jurisdiction question, the Supreme Court noted that § 42-28-21 "does not provide any specific method of review of a determination by the Superintendent with respect to a disability pension, except that such determination shall be confirmed by the governor." Id. Nonetheless, the Supreme Court ruled that, pursuant to the UDJA, "the Superior Court has jurisdiction to construe the rights and responsibilities of any party arising from a statute. . . ." Id. at 478-79. The Supreme Court further held that, "pursuant to its powers granted under the UDJA, the Superior Court had such jurisdiction to determine whether plaintiff [Lieutenant Canario] was entitled to a disability pension. . . ." Id. at 479.
Like the statute in Canario, the HSO does not provide for any specific method of review of a recommendation by the Board for revocation or reduction of a public employee's municipal pension. The only thing the HSO does supply in this regard is a mandate — contained in section (a)(5) — requiring that whenever the Board determines revocation or reduction is warranted, the Board must "initiate a civil action in the Superior Court for the revocation or reduction of any retirement allowance. . . ." City Code of Ordinances § 17-189.1, § (a)(5). As theCanario court made clear, however, in such situations where a statute [or ordinance] is silent on the issue of judicial review, pursuant to its powers granted under the UDJA, the Superior Court has subject matter *Page 25 
jurisdiction to adjudicate matters relating to the rights, status, or other legal relations of any person that may be affected by a particular statute or municipal ordinance.[34][35]
In summation, whether this Court looks to its broad statutorily prescribed jurisdiction over equity actions pursuant to § 8-2-13, or its power under the UDJA to determine the rights of any person that may arise under a statute or ordinance, the existence of this Court's jurisdiction to hear matters filed pursuant to the HSO is evident. Accordingly, the consolidated actions are properly before this Court for review.[36]
 IV Standard of Review
The final threshold issue to be determined is the appropriate standard of review. Specifically, what level of deference, if any, should this Court give to the Board's *Page 26 
recommendation(s) of revocation or reduction made pursuant to section (a)(5) of the HSO. The Board urges the Court to accord the recommendation(s) great deference[37], while the City, together with the Defendants and Plaintiff, seek a de novo
review by this Court.
In determining the applicable standard of review of a civil action filed in the Superior Court pursuant to section (a)(5) of the HSO, it is important to point out that the HSO, as presently constructed, provides the Court with no guidance on this issue. In particular, section (a)(5) simply provides that, "If the retirement board determines that revocation or reduction . . . is warranted, the retirement board shall initiate a civil action in the superior court for the revocation or reduction of any retirement allowance . . . to which the employee is otherwise entitled to under chapter 17." See City Code of Ordinances § 17-189.1, § (a)(5). While section (a)(5) does mandate the filing of a civil action in the Superior Court in situations where the Board determines that revocation or reduction of an employee's municipal pension is warranted, it is devoid of any reference of the applicable standard of review to be applied by the Superior Court when adjudicating such an action. Moreover, because Superior Court review of a civil action brought pursuant to the HSO is a matter of first impression, the Court is faced with the difficult task of deciding, (1) whether to afford the Board's "recommendations" deference, and if so, how much, or (2) whetherde novo review is more appropriate.
As firmly set forth previously, the APA does not apply to the present matter(s). Nevertheless, the Court is mindful of the fact that utilizing a standard of judicial review *Page 27 
similar to that found in § 42-35-15[38] of the APA may be most appropriate. To illustrate, consider the striking similarity between the review process undertaken by the Employees Retirement Board of Rhode Island ("State Retirement Board") — which, as an "agency" pursuant to § 42-35-1, is subject to the APA — when dealing with pensions matters and that utilized by the Board with respect to issues concerning revocation or reduction of municipal pensions. Specifically, when reviewing grievances, the State Retirement Board utilizes a two-tiered review process. See
Employees' Retirement System of Rhode Island Reg. § 10.00(a). First, the grievance is heard by a hearing officer, who issues a written decision that is submitted to the State Retirement Board.Id. The State Retirement Board then reviews the decision, together with any other evidence, and renders its own decision on the matter. Id. Similarly, in the instant matter(s), a hearing officer was initially appointed by the Board in each case to conduct hearings pursuant to section (a)(5) of the HSO.[39][40] Upon conclusion of the hearing, in each instance, the *Page 28 
hearing officer prepared a report and recommendation regarding the matter and remitted his/her findings — along with the entire record developed in the hearing — to the Board for review. The Board reviewed the submitted materials and subsequently determined whether a recommendation of revocation or reduction of a particular employee's municipal pension is warranted.[41]
Aside from the similarity between the review process followed by the State Retirement Board and the Board, in considering applying a deferential standard of judicial review akin to that proffered by the APA to civil actions brought before this Court pursuant to section (a)(5) of the HSO, the Court also regards the actions taken by the Board in pension revocation or reduction matters — preceding the filing of a civil action in Superior Court — as a significant determinative factor. As articulated previously, the Board has routinely engaged in a two-step review process in matters involving revocation or reduction of municipal pensions pursuant to the HSO.[42] Further, *Page 29 
these procedures have even included formal hearings at which the employees have an opportunity to be represented by counsel and present their case. A conclusion by this Court that the employees are now entitled to a de novo review of their cases would essentially render these review procedures undertaken by the Board entirely inconsequential. The Court finds this to be an unnecessary and untenable result. By according the recommendation(s) provided by the Board deference — and analyzing the review procedures undertaken by the Board through the scrutinizing lens of a standard of review comparable to that articulated in § 42-35-15 of the APA to make certain that the Board's recommendation(s) are not (1) arbitrary or capricious, (2) violative of statutory or constitutional provisions, (3) in excess of the Board's statutorily granted authority, (4) unsupported by substantial evidence, (5) made upon unlawful procedure, or (6) affected by other error of law — the employees' rights can be adequately protected, while at the same time providing the review process undertaken by the Board with some degree of significance.[43] *Page 30 
In summation, the Court concludes that when dealing with issues of fact regarding civil actions brought pursuant to section (a)(5) of the HSO, to the extent the facts are supported by substantial evidence and the Board has not acted in an arbitrary or capricious manner, violated any statutory or constitutional provisions, exceeded its powers, or engaged in any unlawful procedure(s), deference shall be given to the Board's recommendation(s). To the extent that issues of law are raised, however, the Court will accord such issues a de novo review. See Rossi v. Employees' RetirementSystem of the State of Rhode Island,895 A.2d 106, 110 (R.I. 2006) ("Although factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law to which we apply de novo review.") (citing In reAdvisory Opinionto the Governor, 732 A.2d 55, 60 (R.I. 1999)); see also 60A Am. Jur. 2d, Pensions, § 1255 (2003) ("If the questions are ones of law, not fact . . . it is proper for the court to apply a de novo standard when reviewing the board's decisions.);Canario, 752 A.2d at 479 ("[I]n respect to the standard of review exercised by the Superior Court over a determination made by the superintendent, we would apply a standard applicable to decisions by the Superior Court on questions of law and would, therefore, review such a determination de novo.")
 V Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds that a criminal conviction — or plea of guilty or nolo contendere which results in a conviction by virtue of § 12-10-12 or § 12-18-3 — is *Page 31 
not a necessary prerequisite for Board action to revoke or reduce municipal pension benefits pursuant to the HSO. Further, the Court also concludes that pursuant to the Superior Court's exclusive jurisdiction over equity actions — § 8-2-13 — and the UDJA — § 9-30-1 — this Court has jurisdiction to adjudicate civil actions filed by the Board pursuant to section (a)(5) of the HSO. Finally, regarding the applicable standard of review, the Court finds that when reviewing civil actions filed by the Board pursuant to section (a)(5) of the HSO, on questions dealing with issues of fact, to the extent the facts are supported by substantial evidence and the Board has not acted in an arbitrary or capricious manner, violated any statutory or constitutional provisions, exceeded its powers, or engaged in any unlawful procedure(s), deference shall be given to the Board's recommendation(s). To the extent that issues of law are raised, however, the Court will accord such issues a de novo review.
[1] To be specific, according to section (a)(5) of the HSO, the only "action" the Board can take to revoke or reduce an employee's municipal pension is to determine whether a "recommendation" of revocation or reduction is warranted, and if so, subsequently file a civil action in the Superior Court for the revocation or reduction of any retirement benefits the particular employee is entitled to.
[2] As of this writing, the Board has not acted upon John J. Ryan's ("Mr. Ryan" or "Plaintiff") case.
[3] For the sake of convenience and efficiency, Mr. Corrente, Mr. Annarino, Mr. Prignano, Jr., and Ms. Parsons will be periodically jointly referred to as "Defendants."
[4] In the cases of Mr. Annarino, Mr. Prignano, Jr., Ms. Parsons, and Mr. Corrente, the Board appointed a hearing officer to conduct a hearing, take testimony, and make recommendations to the Board regarding what action should be taken with respect to the pensions. Additionally, a hearing officer was also appointed by the Board to oversee the hearings concerning Mr. Ryan, but, as referenced above, thus far, no such hearings have taken place.
[5] It should be noted that a plea of guilty or nolo contendere which results in a conviction by virtue of G.L. 1956 § 12-10-12 or § 12-18-3 is also considered a conviction for purposes of section (a)(4) of the HSO.
[6] Furthermore, it should be noted that in Retirement Board v.Azar, 721 A.2d 872 (R.I. 1998), the Rhode Island Supreme Court made clear that "Although Almeida involved the conduct of a state judge, the Court in no way limited the applicability of its reasoning to the reduction or revocation of judicial pensions."Id. 880.
[7] The factors to be "weighted and balanced" included:
 (1) the employee's length of service;
 (2) the basis for retirement, i.e., age, service, disability, etc.;
 (3) the extent to which the employee's pension has vested;
 (4) the duties of the particular employment;
 (5) the employee's public employment history and record;
 (6) the employee's other public employment and service;
 (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;
 (8) the relationship between the misconduct and the employee's public duties;
 (9) the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like;
 (10) the availability and adequacy of other penal sanctions; and
 (11) other personal circumstances relating to the employee bearing upon the justness of forfeiture. Almeida, 611 A.2d at 1387.
[8] The history of PEPRRA's criminal conviction requirement was detailed in Retirement Bd. of Employees' Retirement System of theState v. DiPrete, 845 A.2d 270 (R.I. 2004). In that case, the Rhode Island Supreme Court recounted that:
 The General Assembly enacted PEPRRA in 1992 to provide the Retirement Board with a statutory mechanism to initiate a civil action to revoke or reduce a public official/employee's retirement benefits whenever such person, after January 1, 1993, `is convicted of or pleads guilty or nolo contendere to any crime related to his or her public office or public employment.' Section 36-10.1-3(b), as enacted by P.L. 1992, ch. 2306, art. 1, § 8. In determining the appropriate sanction under PEPRRA, a trial justice is obligated to undertake a
 'multi-factored analysis to decide' * * * `[w]hether the retirement or other benefits or payments to which the public official or public employee is otherwise entitled should be revoked or diminished and, if so, * * * in what amount or by what proportion such revocation or reduction should be ordered.' Retirement Board of the Employees' Retirement System of the State and City of Cranston v. Azar, 721 A.2d 872, 876 (R.I. 1998) (quoting § 36-10.1-3(c)(1)(ii) and (iii)).
 That determination must be made after considering the severity of the crime, any monetary loss suffered by the public as a result of the public official/employee's criminal acts, the degree of public trust reposed in the public official/employer and other factors as justice may require. Section 36-10.1-3(c).
 In 1996, the General Assembly revisited the issue of pension revocation in P.L. 1996, ch. 292. Chapter 292, entitled `An Act Relating to Retirement System-Pensions' (chapter 292 or the act), was put into effect to serve two functions. First, in § 1 of chapter 292, the General Assembly enacted G.L. 1956 § 11-41-31 to authorize a trial justice to directly reduce or revoke a public official/employee's retirement benefits as part of a sentence imposed after a conviction or plea of guilty or nolo contendere to a criminal charge related to the official/employee's public office or employment. Such revocation or reduction under § 11-41-31 could be imposed without any action from the Retirement Board. `In determining whether the retirement or other benefits shall be revoked or reduced the court shall consider and make a finding' based on the same factors applicable to an action brought under PEPRRA, namely: the severity of the crime, the amount of loss suffered by the public as a result of the crime, the degree of public trust reposed in the public official/employee, and any other factors that justice may require. Section 11-41-31(B). If the court declines to disturb the retirement or other benefits pursuant to this section, `it shall order that the retirement or other benefits or payments be made to the public official or public employee.' Id.
 The second function of P.L. 1996, ch. 292 was to amend PEPRRA to dovetail with the newly enacted § 11-41-31. Section two of chapter 292 recites § 36-10.1-3 in its entirety, as amended by the act. Without altering any of the existing provisions of PEPRRA, the General Assembly added language that directs the Retirement Board to institute revocation or reduction proceedings `if no finding is made by the judge in the criminal action pursuant to section 11-41-31.' P.L. 1996, ch. 292, § 2 (§ 36-10.1-3(B)). (fn. 7) The only other addition to PEPRRA made by chapter 292 is a tangential reference to § 11-41-31 in § 36-10.1-3(A), stating that a pension revocation or reduction must be done `in accordance with the provisions of this chapter, or section 11-41-31 if, after [January 1, 1993], such public official or public employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public office or public employment." P.L. 1996, ch. 292, § 2 (§ 36-10.1-3(A)). (emphasis indicates language added by P.L. 1996, ch. 292, § 2.).
 FN7. In its original form, the Retirement Board was directed to "[I]nitiate a civil action in the superior court for the revocation of reduction of any retirement or other benefit" whenever a public official/employee was convicted or pled to the charge. P.L. 1996, ch. 292, § 2 (G.L. 1956 § 36-10.1-3(B)(1)). The Retirement Board's obligation to initiate such proceedings did not depend on an absence of a finding in a criminal action. Id. 279-281.
Finally, the DiPrete Court concluded that "none of the substantive provisions of PEPRRA were altered by chapter 292."Id. 281.
[9] PEPRRA was enacted by the General Assembly to apply to beneficiaries of the state retirement system. Municipalities may participate in the state retirement system pursuant to G.L. 1956 § 45-21-4. See generally
G.L. 1956 § 45-21-1. The City of Providence elected not to participate in the state retirement system and instead administers its own retirement system under City Code of Ordinances § 17-181.
[10] Section (a)(5) of the HSO — titled, "Hearing: civilaction — describes the procedure that must be followed by the Board in determining whether the municipal pension of an employee should be reduced or revoked. See City Code of Ordinances § 17-189.1, § (a)(5).
[11] According to Mr. Ryan, when one looks at the entire Ordinance as a whole, the term "honorable service" referenced in section (a)(1) basically means that an employee is deemed to have honorably served unless that employee has been convicted of a crime related to his or her public employment.
[12] Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan assert that based on a plain reading of the Ordinance, no provision provides the Board with the discretion to determine what "honorable service" is. Further, they also assert that no provision in the HSO expressly provides the Board with the power to revoke or reduce a municipal pension of an employee for any reason other than a conviction of a crime related to the employee's public employment.
[13] To clarify, it is the Court's understanding that when an employee has been convicted of a crime related to his or her public important, the HSO does not call for an automatic revocation or reduction of retirement benefits. The HSO merely provides that when faced with such a conviction, the Board must at least consider whether revocation or reduction is warranted in accordance with its procedures. See
HSO § 17-189.1, § (a)(5).
[14] The Court hastens to add that the manner in which sections (a)(4) and (a)(5) of the HSO were drafted is perplexing. Section (a)(4) expressly states that "[a]ny retirement allowance . . . to which an employee is entitled to . . .shall be revoked or reduced in accordance with the provisions of this section if such employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment . . ." See City Code of Ordinances § 17-189.1, § (a)(4) (emphasis added). Based on the plain language of section (a)(4), it appears that reduction or revocation is mandatory if an employee is convicted of or pleads guilty or nolo contendere to a crime related to his or her public employment. However, upon reading the succeeding section — section (a)(5) — one is left with a dramatically different impression. Specifically, section (a)(5) provides that, "Whenever an employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment,the retirement board shall conduct a meeting . . . todetermine if a recommendation of revocation or reduction . . .is warranted . . ." See City Code of Ordinances § 17-189.1, § (a)(5) (emphasis added). According to section (a)(5), if there is a qualifying conviction or plea of guilty or nolo contendere, revocation or reduction is not mandatory; the only thing the Board is obligated to do is conduct a meeting to determine whether a recommendation of revocation or reduction is appropriate. Such internal inconsistency and contradiction makes the task of trying to interpret the Ordinance considerably more challenging.
[15] The Board avers that HSO § (a)(1) incorporates the common law concept of "honorable service" set forth inAlmeida, supra pp. 4-5, which essentially provides that "vesting [of a pension or retirement benefits] is subject to divestment for actions committed during tenure in office, whether found out while in office or later . . . with or without the benefit of a criminal conviction." See Almeida, 611 A.2d at 1386.
[16] In Rhode Island, the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance.See Ruggiero v. City of Providence,893 A.2d 235, 237 (R.I. 2006) ("[W]hen interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes."); see also Mongony v. Bevilacqua,432 A.2d 661, 663 (R.I. 1981); Town of Warren v. Frost,301 A.2d 572 (R.I. 1973).
[17] Moreover, according to the City of Providence's Code of Ordinances, (a) "in the construction of this Code and of all ordinances hereafter enacted . . . [w]ords and phrases shall beconstrued according to the common and approved usage of thelanguage." See Code of Ordinances, § 1-2 (emphasis added.).
[18] For example, consider a hypothetical situation where a public employee takes bribes from various building contractors in return for the favorable granting of lucrative state contracts. Suppose that the employee's superiors are also involved in the scam. Suppose further that after engaging in this conduct for a number of years, the employee has second thoughts about the situation and goes to the authorities. Finally, assume that after listening to the employee's story, the authorities agree to offer the employee immunity from prosecution for his/her crimes in return for the employee's agreement to testify against his/her superiors. In such a situation, the public employee certainly committed a crime related to his or her public employment, however, due to the grant of immunity, the employee was not convicted of the crime committed.
[19] The Court notes that the interpretation of the Ordinance advanced by Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan would effectively allow public employees who commit crimes that do not result in a conviction by virtue of § 12-10-12 or § 12-18-3 to receive municipal pensions — without the threat of revocation or reduction. According to Mr. Prignano, Jr., Ms. Parsons, and Mr. Ryan's reading of the HSO, a City of Providence employee could conceivably misappropriate public funds for personal benefit, and nonetheless still collect a municipal pension if the employee is not convicted of the crime. Absent express language in the Ordinance mandating such an interpretation, it would be manifestly unreasonable for this Court to conclude that the taxpayers of the City of Providence will be on the hook for the pension benefits of any public employee who commits a crime related to his or her public employment that, for whatever reason, does not result in a conviction.
[20] See supra, pp. 3-5.
[21] See supra, pp. 8-9.
[22] It must be noted that despite an exhaustive analysis of the Ordinance, this Court is still uncertain as to whether the procedures for revoking or reducing a pension articulated in section (a)(5) are applicable to section (a)(1). The specific language of section (a)(5) provides that "Whenever any employee is convicted of or pleads guilty or nolo contendere to any crime . . . the retirement board shall conduct a meeting . . . to determine if revocation or reduction . . . is warranted. If the retirement board determines that revocation or reduction . . . is warranted, the retirement board shall initiate a civil action in the superior court. . . ." See City Code of Ordinances § 17-189.1, § (a)(5). Thus, while it is patently evident that the procedures enunciated in section (a)(5) apply to revocation or reduction proceedings brought pursuant to section (a)(4) — the section of the Ordinance dealing with convictions and pleas of guilty or nolo contendere to crimes related to public employment — because of a disconcerting lack of clarity in the drafting of the HSO, the Court is left to ponder whether those same procedures also apply in situations where the Board is acting pursuant to section (a)(1). As section (a)(5) makes clear, if the Board finds that revocation or reduction of an employee's municipal pension is warranted after conducting a hearing, the Board must initiate a civil action in Superior Court seeking revocation or reduction. Absent explicit language in the Ordinance mandating that those procedures must be followed when the Board is considering revoking or reducing a municipal pension pursuant to section (a)(1), the Court questions whether the Board must follow those procedures outlined in section (a)(5) if bringing a revocation or reduction action under section (a)(1). That being said, in both Mr. Prignano, Jr.'s case and Ms. Parsons's case, the Board essentially followed the review procedures set forth in section (a)(5), despite the fact that those two revocation or reduction matters were brought pursuant to section (a)(1).
[23] See supra pp. 4-6.
[24] Article 10, section 2, of the Rhode Island Constitution sets forth the powers of the judicial branch of state government and provides, in relevant part:
 The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law. A majority of judges shall always be necessary to constitute a quorum. The inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law. Id. (emphasis added).
[25] G.L. 1956 § 8-2-13, entitled "Exclusive jurisdiction of equity actions," provides that:
 The superior court shall, except as otherwise provided by law, have exclusive jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity; provided, however, that every probate court shall have the power, concurrent with the superior court, to replace, remove, or fill any vacancy of any trustee under a trust established under a will, or to effect tax minimization or estate planning under § 33-15-37.1. If an action is brought in the superior court which represents an attempt in good faith to invoke the jurisdiction conferred by this section, the superior court shall have jurisdiction of all other actions arising out of the same transaction or occurrence, provided the other actions are joined with the action so brought or are subsequently made a part thereof under applicable procedural rules, and the court may retain jurisdiction over the other actions even though the initial action fails for want of equity jurisdiction.
[26] Additionally, our Supreme Court has recognized that "[T]he Superior Court is a court of general equitable jurisdiction."La Petite Auberge, Inc. v. R.I. Comm'n for Human Rights,419 A.2d 274, 279 (R.I. 1980).
[27] G.L. 1956 § 8-2-14, entitled "Jurisdiction of actions at law," provides in pertinent part that:
 (a) The superior court shall have . . . exclusive original jurisdiction of all other actions at law in which the amount in controversy shall exceed the sum of ten thousand dollars ($10,000); and shall also have concurrent original jurisdiction with the district court in all other actions at law in which the amount in controversy exceeds the sum of five thousand dollars ($5,000) and does not exceed ten thousand dollars ($10,000). . . . If an action is brought in the superior court which is within the jurisdiction conferred by this section, the superior court shall have jurisdiction of all other actions arising out of the same transaction or occurrence, provided the other actions are joined with the action within the jurisdiction conferred by this section or are subsequently made a part thereof under applicable procedural rules.
[28] G.L. 1956 § 9-30-1., entitled "Scope," provides that:
 The superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.
[29] G.L. 1956 § 9-30-2., entitled "Power to construe," provides in pertinent part that:
 Any person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of . . . validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder."
[30] Section 908(b) of the City's Charter provides in pertinent part that:
 The powers and duties of the retirement board shall be, without limitation, the following:
 (1) To establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction. . . .
[31] Providence Code of Ordinances, § 17-183(1) provides that:
 [T]he general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of this article are hereby vested in a retirement board. The retirement board shall from time to time establish rules and regulations for the administration and transaction of the business of the retirement system, and shall perform such other functions as are required for the execution of this article. Id.; see also Bruckshaw v. Paolino, 557 A.2d 1221, 1222-23 (R.I. 1989) (1980 Providence Home Rule Charter vested authority to regulate city employee pensions "in the Employee Retirement Board of Providence," whose duties are to "establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction").
[32] Section (a)(5) of the HSO provides in pertinent part, "[I]f the retirement board determines that revocation or reduction . . . is warranted, the retirement board shall initiate a civil action in the superior court. . . ." Section (a)(5).
[33] Sections (b)(1) and (b)(2) of PEPRRA provide that, "Whenever any public official or public employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment, the retirement board shall . . . initiate a civil action in the superior court for the revocation or reduction of any retirement or other benefit. . . ." Sections 36-10.1(b)(1) and (b)(2).
[34] While not binding precedent, it is noteworthy that inState v. Marjorie R. Yashar, No. PC 06-1866, 2007 WL 1022663, *38 (R.I. Super. 2007), the trial justice ruled that the UDJA — which is to be "liberally construed" — provided sufficient jurisdiction for the Superior Court to decide an action by the state to determine the pension benefits owed to a former justice. See Yashar,2007 WL 1022663 slip op. at 38-39. Further, the trial justice noted that:
 "To deny jurisdiction here and require the filing of a common law petition for certiorari in the Supreme Court would be tantamount to reading the Uniform Declaratory Judgment Act and equitable powers of the Superior Court out of the law. It could require Supreme Court justices to become finders of fact and to make a decision regarding the parties' claims in the first instance without the benefit of the findings and reasoning of the court below. Ascribing such a role to the Supreme Court would run counter to its precedent . . . that suggests that role belongs not to it, but to the Superior Court." See id.
[35] It is important to point out that, unlike § 42-28-21, the HSO does provide for Superior Court review of Board action. Specifically, if the Board recommends revocation or reduction, the Board must then initiate an action in the Superior Court. See City Code of Ordinances § 17-189.1, § (a)(5). Despite this difference, however, the basic premise expressed by the Court inCanario — that the Superior Court has the jurisdictional power to construe the rights and responsibilities of any party arising from a statute or municipal ordinance by virtue of the powers conferred upon it by the UDJA — is still applicable to the instant matter.
[36] It should be noted that as a municipal entity, acting only on matters of local concern, possessing no statewide authority, and performing no statewide function, the Board is not considered an "agency" within the context of the Administrative Procedures Act ("APA"). See City of Providence v. Local 799, Int'l Ass'n ofFirefighters, 305 A.2d 93, 95 (R.I. 1973). As a result, the Board is not bound by the provisions of the APA. Thus, the Court will evaluate Board action taken pursuant to the HSO under the jurisdiction conferred upon it by § 8-2-13, or in the alternative, § 9-30-1.
[37] In particular, the Board argues that the APA's deferential standard of judicial review set forth in § 42-35-15 should apply. As the Court noted in fn. 36, however, the APA does not apply to a municipal entity such as the Board, which acts only on matters of local concern, possesses no statewide authority, and performs no statewide function. See supra, fn. 36; see alsoLocal 799, Int'l Ass'n of Firefighters, 305 A.2d at 95.
[38] The APA's standard of judicial review is codified in § 42-35-15, which reads as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Section 42-35-15.
[39] For purposes of clarity, it should be noted that according to the express language of section (a)(5), the appointment of a hearing officer is not mandated. In fact, all that the Board is required to do pursuant to section (a)(5) is conduct a meeting — at which the employee will have an opportunity to be heard — to determine whether a recommendation of revocation or reduction is warranted."See City Code of Ordinances § 17-189.1, § (a)(5). In practice however, the Board has chosen to institute a two-step review procedure similar to that used by the State Retirement Board.
[40] With respect to Mr. Ryan's case, while a hearing officer has been appointed, to date, no hearings have taken place.
[41] In Environmental Scientific Corp. v. Durfee,621 A.2d 200 (R.I. 1993), the Rhode Island Supreme Court compared this two-step review process to a funnel. Id. at 207-08. The hearing officer, "sitting as if at the mouth of the funnel" analyzes all the evidence, testimony, relevant law, and opinions and issues a decision. Id. The Board, as the second level of review, then reviews the hearing officer's findings and issues a final decision. Because the Board sits at the "discharge end of the funnel," however, it does not receive the information considered by the hearing officer first hand. Id. As a result, theEnvironmental Scientific Corp. court held that, "the further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder."Id.
[42] The Court questions whether, based on the plain language of section (a)(5) of the HSO, the Board has an obligation to provide such a two-step review process — including a formal hearing at which parties are permitted to present both documentary and testimonial evidence, as well as cross-examine witnesses. According to section (a)(5), the only thing the Board is required to do is, "[c]onduct a meeting, with the employee having the opportunity to be heard, to determine if a recommendation of revocation or reduction . . . is warranted." See City Code of Ordinances § 17-189.1, § (a)(5). Based on the plain language of section (a)(5), it appears that the only thing the Board must do before determining whether a recommendation of revocation or reduction is appropriate is provide the employee with a due process "meeting" analogous to the type of "hearing" set forth by the United States Supreme Court in Loudermill v. Cleveland Board ofEducation, 470 U.S. 532 (1985). In Loudermill, the United States Supreme Court considered the due process rights to be afforded a public employee before such an employee is terminated.Id. at 532. Specifically, the Court in Loudermill stated that the "[t]enured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."Id. at 546. The Court further opined that while a pre-termination "hearing" is necessary, it "need not be elaborate," and that "[i]n general, `something less' than a full evidentiary hearing is sufficient prior to adverse administrative action."Id. at 545. In sum, it seems as though, based on section (a)(5) of the HSO, the Board is only required to provide an employee with a "meeting" tantamount to the type of "hearing" described in the Loudermill case before considering whether to recommend pension reduction or revocation. The Board, however, has decided to provide the employee with a formal, full evidentiary hearing before an appointed hearing officer before considering whether revocation or reduction is warranted. Thus, through its actions, the Board has quite possibly been granting employees more due process rights than they are technically owed during the course of pension revocation or reduction matters brought pursuant to the HSO. Recognizing that the HSO does not require a full formal hearing, however, should the Board decide to refrain from affording an employee the privilege of a full hearing in the future, the issue of whether adequate due process rights were accorded the employee would have to be closely examined.
[43] The Court notes that, as a general matter, courts in other jurisdictions have applied a deferential standard of review when dealing with retirement board decisions, and uphold such decisions unless a decision is unsupported by substantial evidence, arbitrary and capricious, beyond the powers of the board to make, or violative of a statutory or constitutional right of the employee.See 60A Am. Jur. 2d Pensions, § 1255 (2003); seealso e.g., Rowzee v. Public Employees' Retirement System,777 So.2d 664, 666-67 (Miss. 2000) ("[T]he standard of review is whether the Board's decision was (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the powers of the Board to make, or (4) violative of a statutory or constitutional right. . . ."); In re Bailey, 769 A.2d 360, 362 (N.H. 2001) (stating that the standard of review is whether the board acted illegally with respect to jurisdiction, authority, or observance of the law, whereby it arrived at a conclusion that cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously); Lovely-Belyea v. Maine StateRetirement System, 804 A.2d 359, 362 (Me. 2002) (stating that the court reviews board decisions for errors of law, abuse of discretion, or findings of fact unsupported by competent and substantial evidence).